T.C. Memo. 2008-203

UNITED STATES TAX COURT

RALPH THOMAS WHITECAVAGE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 788-06.                    Filed August 27, 2008.

Ralph Thomas Whitecavage, pro se.

Jonae A. Harrison, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Respondent determined the following

deficiencies and penalty in petitioner's Federal income taxes:

|      |            | Accuracy-Related Penalty |
| Year | Deficiency | Sec. 6662(a) |
|------|------------|--------------------------|
| 2001 | $1,590     | --     |
| 2002 | 14,521     | $2,904 |
| 2003 | 2,490      | --     |

The issues for decision are: (1) Whether during 2001, 2002, and 2003 petitioner engaged for profit in the activity of breeding greyhounds for racing; and (2) whether petitioner is liable for a section 6662 accuracy-related penalty for 2002.

All section references are to the Internal Revenue Code in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

The parties have stipulated some facts, which are so found. When he petitioned the Court, petitioner resided in Arizona.

Petitioner was an auditor for the Internal Revenue Service (IRS) for 21 years, including the years at issue. He was stationed in the Yuma, Arizona, office of the IRS, where he worked about 42.5 hours a week before retiring in 2006.

Petitioner resided on his property about 3 miles from Yuma. In 1994 petitioner began breeding greyhounds there for the purpose of entering them in dog races. Each year he bred a litter of pups. Over 10 years he raised about 88 greyhounds.

Before 2002 petitioner kept his greyhounds in crates in his garage; twice a day he would take them out for exercise. During 2002 petitioner built a 1,000-square-foot kennel and added a new run and fencing.

Because of his full-time job at the IRS, petitioner could not spend much time with the dogs during workdays, but he fed and

cleaned up after them mornings and evenings.  Petitioner did not hire any caretaker to tend the dogs while he was at work.

Petitioner would keep the pups on his property until they were a little over 1 year old.  Then he would send them to Florida, Oklahoma, or New Mexico to train for racing on a track. After being trained, petitioner's greyhounds were taken to be raced in Florida and Arizona.  Petitioner received a percentage of any winnings.

Not all the greyhounds survived training; petitioner "lost" about 20 greyhounds because of bad training methods by the trainers in the racing kennels.  The greyhounds that survived spent the rest of their racing lives on the track and generally did not return to petitioner.  Instead, at the end of their racing lives the greyhounds generally would be "petted out"; i.e., sent into an adoption program or to a veterinarian, presumably to be euthanized.  Petitioner received no money for these dogs upon their retirement.

Before he commenced breeding greyhounds for racing, petitioner did not consult an economist or other professional business adviser.  Although he received some racetrack winnings, petitioner never realized a profit from breeding and racing greyhounds.  Petitioner ceased his greyhound activity in 2006, the same year he retired from the IRS.

On Schedules C, Profit or Loss From Business, of his Forms 1040, U.S. Individual Income Tax Return, petitioner reported losses from his greyhound activity as follows:

|                          | 2001     | 2002     | 2003     |
|--------------------------|----------|----------|----------|
| Gross dog-race winnings  | $5,695   | $3,746   | $4,210   |
| Total expenses           | 15,340   | 53,230   | 19,873   |
| Net loss                 | 9,645    | 49,484   | 15,663   |

By notice of deficiency respondent determined that these reported losses were not allowable under section 183 because petitioner's greyhound activity was not entered into for profit.[1] Respondent also determined that for 2002 petitioner was liable for the section 6662 accuracy-related penalty, on the basis that petitioner's corrected income tax liability for 2002 was $20,513 rather than the $5,992 that petitioner had reported, giving rise to a substantial understatement of income tax within the meaning of section 6662(d).

OPINION

A.   Petitioner's Greyhound Activity

Under section 183(b)(2), if an individual engages in an activity without the primary objective of making a profit, deductions attributable to the activity are allowable only to the extent of gross income from the activity.  See Allen v. Commissioner, 72 T.C. 28, 33 (1979).  The critical inquiry is

_____

[1] Respondent allowed petitioner miscellaneous itemized deductions equal to the amounts of gross income reported from the greyhound activity.

whether making a profit is the taxpayer's "predominant, primary, or principal objective".  Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Machado v. Commissioner, T.C. Memo. 1995-526, affd. without published opinion 119 F.3d 6 (9th Cir. 1997); Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published opinion 111 F.3d 139 (9th Cir. 1997).  Although the taxpayer need not have a reasonable expectation of realizing a profit, he or she must have a bona fide objective to do so.  Burger v. Commissioner, 809 F.2d 355, 358 (7th Cir. 1987), affg. T.C. Memo. 1985-523; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs.  Whether the taxpayer has the requisite objective to realize a profit is a question of fact, to be resolved on the basis of all relevant circumstances, with greater weight being given to objective factors than to mere statements of intent.  Dreicer v. Commissioner, 78 T.C. 642, 645-646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, supra at 426.  The taxpayer generally bears the burden of establishing that the activity was engaged in for profit.[2]  See Rule 142(a).

---

[2] Petitioner has not claimed or shown that he meets the requirements under sec. 7491(a)(1) to shift the burden of proof to respondent as to any factual issue relating to his liability for tax.

The regulations under section 183 provide a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit.  The factors include:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort the taxpayer spent in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on other activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b), Income Tax Regs.; see Golanty v. Commissioner, supra at 426.

As discussed below, on the basis of all the evidence in the record we conclude that petitioner did not engage in his greyhound activity for profit within the meaning of section 183.

1.   Manner in Which Petitioner Carried on the Activity

Petitioner did not carry on his greyhound activity in a businesslike manner.  He did not maintain complete and accurate books and records regarding his greyhound activity, did not maintain a written business plan, and did not contemporaneously prepare budgets or financial analyses for his greyhound activity. Although petitioner claims to have prepared a "cost analysis

plan", at trial he acknowledged that this plan was prepared only in the course of the audit and examination of the tax years at issue. His substantiation of claimed expenses was spotty and consisted largely of some canceled checks supported by his vague testimony. He had no written contracts with the third parties who trained, hauled, and raced his greyhounds.[3]

Petitioner was licensed with the Arizona Department of Racing, at least for 2001; he alleges that he was also licensed with the Texas Department of Racing and the Florida Department of Racing. He also alleges that he had "some of the best blood lines in Greyhound Racing in the State of Arizona." Such circumstances do not suffice to establish, however, that petitioner conducted his greyhound activity in a businesslike manner. This factor weighs against petitioner.

---

[3] At trial petitioner indicated that he wished to call as a witness Lonnie Boyle, who allegedly hauled petitioner's dogs to training sites and leased petitioner's dogs to run under Mr. Boyle's kennel name. Petitioner stated that he expected to elicit from Mr. Boyle testimony about the "mechanics of the racing kennel" and "basically what happens to the dogs through the racing end of it and what happens when it's petted out." Having failed to subpoena Mr. Boyle, however, petitioner failed to have him available at trial. The Court declined petitioner's request to continue the trial to receive Mr. Boyle's testimony at some later date. Insofar as it might be pertinent to our analysis of whether petitioner engaged in his greyhound activity for profit within the meaning of sec. 183, the subject matter of Mr. Boyle's expected testimony, as described by petitioner, appears largely redundant of undisputed information already in the record. Moreover, insofar as petitioner may have sought to elicit expert testimony from Mr. Boyle, petitioner failed to submit an expert report pursuant to Rule 143(f).

2.    Expertise of Petitioner or Advisers

Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate a profit motive if the taxpayer carries on the activity in accordance with such practices.  Sec. 1.183-2(b)(2), Income Tax Regs.  In analyzing profit motive, a distinction must be drawn between expertise in the mechanics of an activity and expertise in the business and economic aspects of an activity.  See Burger v. Commissioner, supra at 359.  Failure to consult economic experts or to develop an economic expertise may indicate a lack of a profit motive.  Id.

Although petitioner presumably acquired some knowledge about the mechanics of greyhound breeding and racing before he commenced his greyhound activity, he has not demonstrated that he consulted economic experts or developed any personal economic expertise as to how to make a profitable business of his greyhound activity.  This factor weighs against petitioner.

3.    Time and Effort Expended in Activity

Time and effort expended in carrying on an activity may be indicative of profit motive, particularly in the absence of substantial personal or recreational elements associated with the activity.  Sec. 1.183-2(b)(3), Income Tax Regs.  During the years at issue, petitioner was a full-time IRS employee.  At trial

petitioner acknowledged that his full-time IRS job limited the time he could devote to the greyhound activity.  Petitioner had time to breed only one litter of pups annually.  At trial he conceded that for his greyhound activity to be profitable he would have needed to breed at least three or four litters annually.  This factor weighs strongly against petitioner.

4.  <u>Expectation That Assets May Appreciate in Value</u>

On brief petitioner contends that the expectation that one or more of his greyhounds might become a winning "Stakes Dog" was "a major component" in his decision to engage in his greyhound activity.  He claims that such a dog "could easily have an expected value price of between $100,000 to $250,000."  The evidence strongly suggests, however, that petitioner's greyhounds generally depreciated in value, being either "lost" during training or else "petted out" at the end of their racing careers.[4]  Insofar as the record shows, in all the years that petitioner engaged in his greyhound activity, he never sold any of his dogs.  On the basis of the evidence in the record, we are unpersuaded that petitioner had a bona fide expectation of making a profit on his greyhound activity by selling his dogs at a price that would generate sufficient income to offset past losses.

---

[4] Petitioner claims that in 2000 one of his greyhounds won a race but acknowledges that by 2001 the greyhound had "finished her career" as a brood on his farm.

Petitioner claims that improvements made to his property in 2002, such as the addition of a kennel house, added "considerable value" to his property.  There is no evidence, however, that petitioner held his property with a view of subsequently selling it for a profit to defray the costs of his greyhound activity.  Accordingly, we do not take these improvements into account in judging petitioner's objective in conducting the greyhound activity.  See Golanty v. Commissioner, 72 T.C. at 430.  In any event, the evidence in the record does not establish either the cost of the improvements or the extent to which they might have added to the property's value.  This factor weighs against petitioner.

5.   Petitioner's Success in Other Activities

If the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises, it may tend to show that the current activity was entered into for profit, even though it is presently unprofitable.  Sec. 1.183-2(b)(5), Income Tax Regs.  Insofar as the record reveals, petitioner has not engaged in other activities similar to the greyhound activity by which we might evaluate his success in those other activities.[5]  This factor is neutral.

---

[5] On brief, petitioner alleges that before going to work for the IRS he worked in the hotel industry.

6.   History of Income or Losses From Activity

Where losses continue beyond the period which is customarily necessary to bring the operation to profitable status, it may be an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.  As of 2003 petitioner had realized losses from his greyhound activity for 10 straight years.  This factor weighs against petitioner.

7.   Amount of Occasional Profits

The amount and frequency of occasional profits earned from the activity may be indicative of a profit objective.  Sec. 1.183-2(b)(7), Income Tax Regs.  Petitioner never realized a profit from his greyhound activity.  This factor weighs against petitioner.

8.   Petitioner's Financial Status

Substantial income from sources other than the activity may indicate lack of a profit motive, especially if there are personal or recreational elements involved.  Sec. 1.183-2(b)(8), Income Tax Regs.  During the years at issue, petitioner had a full-time job with the IRS.  This factor weighs against petitioner.

9.   Elements of Personal Pleasure

The presence of personal motives in carrying on an activity, especially if recreational or personal elements are involved, may indicate that the activity is not for profit.  Sec. 1.183-

2(b)(9), Income Tax Regs.  The mere fact that a taxpayer derives pleasure from an activity, however, does not show a lack of profit objective if the activity is conducted for profit as evidenced by other factors.  Id.

Certain aspects of petitioner's activity, such as feeding, grooming, and cleaning up after the greyhounds, generally might not be considered pleasurable, even though they are not so different from the duties of any pet owner.  Ultimately, however, it seems to us that petitioner's activity of breeding greyhounds for racing, although conducted by petitioner in a seemingly inhumane manner (for many years keeping numerous dogs confined in crates in his Yuma, Arizona, garage, while he worked a full-time job at the IRS, sending the pups off to "training" that almost a fourth of them would not survive, and ultimately casting off most of the others for possible adoption or destruction)[6] involved recreational elements as are common to other forms of recreational gambling, with those elements being enhanced by such sense of sport or gamesmanship as might derive from having one's own dogs in the races.  This factor weighs against petitioner.

On the basis of all the evidence, we conclude that petitioner failed to establish that he engaged in his greyhound

---

[6] In making these observations, we intend no inference as to any finding of criminal liability of petitioner, an issue which is beyond the purview of this Court.

activity with a predominant, primary, or principal objective to make a profit within the meaning of section 183.

B.   Section 6662 Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a 20-percent accuracy-related penalty on any portion of a tax underpayment that is attributable to, among other things, any substantial understatement of income tax, defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1).  Petitioner's understatement of tax for 2002 ($14,521) exceeds $5,000 (which is greater than 10 percent of the tax required to be shown on his 2002 return ($2,051)).  Respondent has satisfied his burden of production under section 7491(c).

The accuracy-related penalty does not apply with respect to any portion of the underpayment if it is shown that the taxpayer had reasonable cause and acted in good faith.  Sec. 6664(c)(1).  Petitioner has not shown (or even expressly claimed) that he had reasonable cause or acted in good faith with respect to his understatements of income tax.  Any such defense appears especially problematic in the light of petitioner's employment as an IRS auditor.

Contentions advanced by the parties and not addressed herein we conclude to be moot or without merit.[7]

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[7] In particular, petitioner states on brief that he "believes" that he has been audited twice for tax years 2001 and 2002, the first time as part of an investigation by the U.S. Treasury Inspector General for Tax Administration (TIGTA). He appears to suggest that because of this purported TIGTA investigation, the subsequent IRS examination which resulted in the notice of deficiency that is the subject of this proceeding was a second examination of petitioner's books and records that was prohibited pursuant to sec. 7605(b). Petitioner cites no authority (and we are aware of none) for the proposition that sec. 7605(b) applies to a TIGTA investigation of an IRS employee. In any event, the evidence in the record does not establish that respondent ever examined petitioner's books and records in connection with any TIGTA audit. To the contrary, according to petitioner's representations on brief, the TIGTA audit appears to have been concluded upon the basis of an interview with petitioner.